SNEED, J.,
delivered the opinion of the Court.
.The action is brought upon an instrument in the words and figures following:
“$575.00. Twelve months after date, we promise to pay Alexander Officer and Luin Miller, executors of Nancy Officer, deceased, five hundred and seventy-five dollars, for value received, for a negro girl, Martha. But we hereby expressly reserve a lien on said slave for the purpose of securing the payment of the purchase money, at which time we agree to make a bill of sale to said purchasers. This 9th of January, 1862.
“O. H. P. Sims, [seal.]
“¥m. GleNN, [seal.]”
The instrument is signed only by the purchasers, who are the defendants in the cause.
The suit was instituted on the 22d of December, 1866, *504 and the writ was returnable to the January Term, 1867, of the Circuit Court of White County. A declaration was filed at that Term, to which the defendants demurred, and the demurrer was sustained, with leave to file an amended declaration, which was done. To this amended declaration there was also a demurrer which was sustained, and the cause dismissed. On motion of the plaintiffs, this latter order was set aside, and leave granted the plaintiffs to file another amended declaration. At the May Term, 1867, the second amended declaration was filed. This declaration set out the instrument sued on, and concluded with these words: “And the said defendants then and there delivered said writing to the plaintiffs, but the said defendants, though often requested so to do, have not paid said sum of money, or any part thereof, to the plaintiffs, although plaintiffs aver that they were always ready, and are now ready and willing to make a bill of sale to the purchasers, according to the true intent and meaning of said writing. But defendants wholly failed and refused to pay the said sum of $575; wherefore the plaintiffs say they have been damaged $900, and therefore they sue.” To this declaration there was also a demurrer, which was sustained; from ■which judgment the plaintiffs appealed.
The questions of law arise upon the causes of demurrer assigned, which are the following:
1. That plaintiffs aver that they have always been ready to make a bill of sale; but do not aver that they ever offered, or tendered, or proposed to make a bill of sale, or notified defendants that they wanted an execution of the contract.
*505 2. They also aver that they are now ready and wilb-ing to make the bill of sale, without averring any ability to do so.
3. They aver a readiness to make the bill of sale now, without tendering the same into court, which averment is therefore nugatory, and of no validity.
4. They aver that they are now ready to make the bill of sale, when the Court judicially knows that they can not make a bill of sale for any human being on this continent.
• 5. Nor do they aver that they tendered said bill of sale to the defendants, or offered to make it to them, before the commencement of this action.
6. And they demur generally, because it is not averred that they complied with, or offered to comply with, their part of the covenant, before bringing this action.
The issues upon the demurrer of defendants present several questions necessary to be considered in the adjudication of this cause, involving the construction of the instrument itself in reference to the character of its covenants — whether, upon the proper interpretation thereof, the declaration is demurrable, and whether, in view of the great public events by which the title to slave property was extinguished, the loss must fall upon the plaintiffs or the defendants.
The. course of modern judicial opinion, in the interpretation of covenants, has been to resolve all other rules into one of intention. The artificial, and often subtle distinctions, upon the doctrine of mutual or concurrent covenants, or covenants with dependent or independent conditions, must all be subordinate at last to the rule of *506 intention,- the only infallible touchstone for the interpretation of contracts.
Does the instrument sued on embody concurrent covenants, which are to be performed at the same time, or dependent covenants, in which the obligation to perform one is made to depend upon the performance of the other ? The defendants insist that they are mutual covenants, or dependent agreements — the one to pay, and the other to convey upon payment.
It is observed in a note to the case of Pordage v. Cole, 1 Saund., 320; Comyn on Con., 51, that “almost all the old cases, and many of the modern ones, on this subject, are decided upon distinctions so nice and technical, that it is very difficult, if not impracticable, to deduce from them any certain rule or principle, by which it can be ascertained what covenants are independent, and what dependent.” And it is stated, as a doctrine to which the courts have'always adhered in the construction of covenants, that, “where the dependence or independence of the respective engagements is only to be collected from the evident sense and meaning of the parties, the rule is, that, however the covenants or promises may be transposed, their precedency must depend upon the order of time in which the intent of the transaction requires their performance.” Com. on Con., 51. And, again, it is said that they are to be construed to be dependent or independent, not according to their arrangement in the deed, but according to the intention and meaning of the parties, and the order in which the several things are to be done, and technical words should give way to such intention. 2 Bac. Ab., 614; 7 Term It., 130; 8 Term *507 II., 366. The familiar example in the old authorities is, “if a day be appointed for the performance of the covenant on one part, and it is to happen, or may happen, before the covenant in the other part is to be performed, the covenants are not dependent. 2 H. BL, 388; 1 East, 629; 2 Johns.; 272; 2 Bac. Abr., Bouv. Ed., 614.
This contract was for the sale and purchase of a slave, which, it is stated at the bar, was, at the time of the sale, delivered to the purchaser. There is one feature in the contract, which has been criticised at the bar, which might render it very doubtful, aside from all other questions, whether it contains any reciprocal covenant at all. The vendors of the slave have no where in the contract bound themselves to the performance of any of its covenants, by signing the same, or otherwise. This might become a serious question in a court of law, if an action were possible upon the alleged covenants of the plaintiffs. The intention to create reciprocal obligations is very manifest, and at the time this contract was made, such an intention, in a proper form of proceeding, might, perhaps have been enforced. But can the defense of dependent covenants avail in the court of law upon this instrument, when the plaintiffs have made no covenant at all? The words, “but we hereby expressly reserve a lien on said slave, for the purpose of securing the payment of the purchase money, at which time we will make a bill of sale,” unquestionably show that it was the purpose of the parties, on both sides, to execute this instrument, and bind themselves by it, but the defendants only have done so. The case is presented to us, then, as a mere obligation, on the part of defendants, to pay a sum of money *508 for a consideration which was then a good consideration, and which continued so to be until after the maturity of said obligation. It is very clear that there was to be no siuch thing as a mutual dependent covenant ‘for the purposes of this defense, unless both sides have bound themselves in such a way that actions at law might be sustained respectively against them.
But waiving this question, the inquiry arises upon the construction of this instrument: Was the price of the slave to be i^id first, before the conveyance or bill of sale was to be executed? If this be so, then the demurrer is not well taken; for the law would exact of the defendants the performance of their contract, or an offer to perform it, before a breach can be predicated as against the plaintiffs. It is very manifest that the payment of the. price was the first thing to be done. The property was in the possession of the purchasers. It remained to them to pay the price, and then to demand the bill of sale. And it is clear that under this contract, accompanied by delivery, a payment of the price at the time it was due would have vested the title without the aid of a written conveyance. In this view, and according to the principles above stated, admitting this to' be a reciprocal covenant, it is not a dependant covenant, as contemplated in the defendant’s demurrer. The doctrine is not controverted, that, when an act is to be done by the plaintiff before the accruing of the defendant’s liability under his contract, the plaintiff must aver in his declaration and prove, either his performance of such condition, or an offer or readiness to perform it, which the defendant rejected. This doctrine, we hold, *509 has no application to this case, because there was no covenant on the part of the plaintiff to perform any act which was to precede the payment of this debt by the defendants: 2 Sneed, 562. If the plaintiffs covenanted to convey at all, they did so upon condition that defendants would pay the price. And if they failed to do so, it was on account of the default of defendants in not performing their precedent covenant to pay at the maturity of the note, when the plaintiffs had it in their power to make their own covenant effective. But conceding that the instrument does embody the dependant covenants, as insisted by the defendants, the declaration does aver a readiness on the part of the plaintiff to perform his part of the covenant at the time when said purchase money should have been paid, and when he could have made an effective bill of sale. And this we hold sufficient.
The ruling of the Court, upon the application of plaintiff to set aside the judgment of dismissal, and permit the filing of the second amended declaration, was the exercise of a sound discretion, which has ample authority in our statute of amendments: Code, 869.
The last, and perhaps the main question intended to be raised by the demurrer, is the effect of the destruction of all rights of property in slaves by the public events which followed soon after the maturity of the debt now sued on. In the view we have taken of the instrument in question, it is a simple obligation to pay money — a unilateral covenant to pay the price of a negro sold and delivered, absolutely and without condition. The Court will take judicial notice of the existence of *510 the institution of slavery in this State on the 9th of January, 1862, when this purchase was made, and its existence on the 9th of January, 1863, when this debt was due, and of the utter extinguishment of that species of property by the Constitution of the 22d of February, 1865. This sale and delivery of the slave, with the instrument in question, the only evidence of the contract of the parties, completed the obligation of the purchaser in law to pay the price. The subsequent changes in the organic law, by which that species of property was destroyed, does not relieve the purchaser of the obligation to pay the price. It is well settled that in such case, the loss must fall upon him.
The judgment of the Circuit Court sustaining the demurrer, is reversed, and the cause remanded for trial upon its merits.